FILED by _____ D.C.
SEP 12 2011
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

**UNITED STATES' DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CIVIL DOCKET NUMBER:**

**11-CV-23304-ALTONAGA/SIMONTON**

**PRECIOUS OKEREKE**
**Plaintiff**

**V**

**BOSTON POLICE HACKNEY DIVISION AND**

**UNKNOWN HACKNEY INSTRUCTOR IN INDIVIDUAL AND OFFICIAL BASIS**
**Defendants**

**COMPLAINT**

**INTRODUCTION**

The Plaintiff during summer of 2004 decided to obtain a hackney license to operating a taxi in the City of Boston. The Plaintiff paid the registration fee - $75.00 and the necessary materials were given to the Plaintiff accordingly. The Plaintiff was expected to attend three-day classes at the Roxbury Community College. The Plaintiff complied like a lamb. For unavoidable reason, the Plaintiff was latish – five-minute – on the third day of the classes. A dictatorial instructor ordered the Plaintiff to leave. Owing to non-completion of the three-day mandatory classes, the Plaintiff would not sit for the examination. All things being equal, the order was purely unconstitutional; the Plaintiff was never given pre- and post-deprivation hearing hitherto. More, the $75.00 the Plaintiff paid was un-refunded. Consequent upon the unconstitutional act, the Plaintiff lost potential earning power from then thereon. All things being equal, the decision to disallow the Plaintiff to participate in the last class was *ultra vires*. The instructor needed not to love the Plaintiff, but he needed not to condemn the Plaintiff to constitutional injury. Hopefully, the Defendant would not waste invaluable time arguing on statute of limitations and non-exhaustion of administrative remedies. With candor in communications, such recourse would lead the necessary parties nowhere. In essence, by the special grace and love of God, the Plaintiff would prevail.

**PARTIES**

The Plaintiff resided in Boston for upwards of 20-year. The Plaintiff attended colleges and universities locally and nationally. The Plaintiff was currently unemployed owing to circumstances beyond the Plaintiff's control. The Plaintiff's contact information would be as stated below. The first Defendant was the City of Boston. The second Defendant was her employee thus Police Department (Hackney

Division). It should be assumed that they had common address – One Schroeder Plaza, Boston – MA 02120-2010. However, the address for the proceedings would be different. It would be: The Boston City Hall, Law Department – Room 615, Boston, MA 02201.

## JURISDICTION

The Court had jurisdiction constitutionally, procedurally and statutorily. [Article III Section 2; Eight Amendment; 14th Amendment; First Amendment; 18 USC Section 241 and 242; 28 USC Sections 1357 and 1367; 42 USC Section '981-88; MGLc 12 Sections 11H-11J; MGLc 151B; MGLc 249 Section 9; MGLc 258 Section 10; MGLc 265 Sections 37 and 39] These would be the bases for the head.

## "FAILURE TO TRAIN AS A THEORY OF SECTION 1983 LIABILITY …"

The second Defendant should have refrained from taking such a draconian measure against the Plaintiff vis-à-vis property and liberty interests. Such a measure was purely *ultra vires* and negligent. The Plaintiff would not particularize more on the sub-head. Its shortened excerpt read thus:

"Title 42 U.S.C. Â§ 1983 has developed to the point that it provides a remedy for the violation of federally-protected rights by governments and its employees. That was not always the case, however. Enacted in 1871, the statute fell into almost a century of disuse, as the Supreme Court construed its reach very narrowly. See Civil Rights Cases, 109 U.S. 3, 3 S. Ct. 18 (1883). Then, in 1961, the Supreme Court issued its landmark decision of Monroe v. Pape, 365 U.S. 167, 81 S. Ct. 473, (1961) in which Justice Douglas, writing for the majority, determined that the policy behind the statute was "to afford a federal right in federal courts because . . . claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by state agencies." 365 U.S. at 180. Monroe thus signaled the resurrection of Â§ 1983, and the role and influence of the federal courts in enforcing civil rights and liberties has never been the same since."

### 01)   OVERT DENIAL OF WELL-ESTABLISHED CONSTITUTIONAL RIGHTS

The dismissal or closure of the proceedings reflected upon lack of Equal Protection and Due Process Clauses and calculated obstruction of justice. [First Amendment; Fifth Amendment; 14th Amendment; 18 USC Sections 4, 241, 242, 245, 1341. 1349, 1505, 1509,1621 and 2382] Indeed, Equal Protection and Due Process Clauses were not the least constitutional doctrines in United States' Constitution and the world over! A couple of excerpts on the sub-head read, thus:

"Where rights secured by the Constitution are involved, there can be no 'rule making' or legislation which would abrogate them." [*Miranda v. Arizona*, 384 U.S. 426, 491 86 S. Ct. 1603 (1966)]

"An unconstitutional act is not law; it confers no rights; it imposes no duties; affords no protection; it creates no office; it is in legal contemplation, as inoperative as though it had never been passed. [*Norton v. Shelby County*, 118 U.S. 425 p. 442 (1886)]

## 02) NEGLIGENCE

On that, the Plaintiff would define negligence according to Restatement of Torts, Second Edition, Volume 3 Section 16.1 by Harper, James and Gray, thus:

"Negligence is conduct, which fall below the standard established by law for protection of others against unreasonable risk of harm. State of mind of indifference or inadvertence must exist. Negligence resulted from ignorance, stupidity, bad judgment, timidity or forgetfulness. It also resulted from deficiencies in knowledge, memory, observation, imagination, foresight, intelligence, judgment, quickness of reaction, deliberation, coolness, determination and courage. Constitution of negligence must reflect "voluntary" conduct – conscious manifestation of the actor's will."

## 03) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)

The Defendants' conduct underscored roundly the sub-head too. Writing much on it would be time-consuming individually and collectively. The Plaintiff knew what the Defendants drove at – *unjust enrichment*. The law provided against *unconscionability* or commercial immorality. The sub-head was also known as "tort of outrage" in some jurisdiction. The disallowance not to attend the third day class was not without negative spill-over effects. The queer conduct triggered [off] extreme emotional distress to the Plaintiff unquestionably. The elements existed - "intentional or reckless act," "extreme and outrageous conduct," "in public," *et cetera*.

## 04) DELIBERATE INDIFFERENCE

An excerpt on that read thus:

"In *Hope v. Pelzer*, 536 U.S. 730 (2002), the United States Supreme Court ruled that the defense of qualified immunity, under which government actors may not be sued for actions they take in connection with their offices, did not apply to a suit challenging the Alabama Department of Corrections's use of the "hitching post", a punishment whereby inmates were immobilized for long periods of time. The former prisoner who had lost his suit in the lower courts, was therefore allowed to go forward with his case."

## 05) UNUSUAL CRUELTY [EIGHT AMENDMENT]

The Defendants' conduct would not be dissociated from that. Particularization was unnecessary too.

## 06) EXPOSURE OF THE PLAINTIFF TO TORTURE [18 USC SECTION 2340]

Plaintiff's particularization on the sub-head was unnecessary! Its shortened excerpt read:

"As used in this chapter—

(1) "torture" means an act committed by a person acting under the color of law specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control;

(2) "severe mental pain or suffering" means the prolonged mental harm caused by or resulting from—

(A) the intentional infliction or threatened infliction of severe physical pain or suffering;"

**07) DEPRIVATION OF RIGHTS UNDER COLOR OF LAW [18 USC SECTION 242]**

Once more, because of the Defendant's administrative or procedural negligence or misconduct, the Plaintiff suffered practically unquantifiable property interest. Such condemnable conduct matched with the sub-head. Its shortened excerpts read:

"This statute makes it a crime for any person acting under color of law, statute, ordinance, regulation, or custom to willfully deprive or cause to be deprived from any person those rights, privileges, or immunities secured or protected by the Constitution and laws of the U.S."

"This law further prohibits a person acting under color of law, statute, ordinance, regulation or custom to willfully subject or cause to be subjected any person to different punishments, pains, or penalties, than those prescribed for punishment of citizens on account of such person being an alien or by reason of his/her color or race."

**RELIEF SOUGHT**

The Plaintiff would like her $75.00 to be refunded with reasonable interest.

**COMPENSATORY DAMAGES**

The amount for the sub-head would be $1m for the first and second Defendants officially respectively.

For the second Defendant, the Plaintiff would demand $90,000.00 individually. Cost and interest would be excluded.

_____
PRECIOUS OKEREKE
P O Box 171121
Boston – MA 02117
Telephone (617) 265 6579


**Dated in Boston – Massachusetts – on Tuesday – September 6th - 2011**